UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEBBY HAAKE, an individual, and ROBERT HAAKE, an individual,<br><br>   Plaintiffs,<br><br>v.<br><br>BARRY STRUDWICK, an individual, and GRUPO DEL PACIFICO DEVELOPMENT VENTURE S.A., a Costa Rican company,<br><br>   Defendants. | Case No. 1:14-cv-00212-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

The Court has before it the Motion to Dismiss filed by Defendants Barry Strudwick and Grupo Del Pacifico Development Venture S.A. (Dkt. 5). Defendants argue this case should be dismissed under Federal Rule of Civil Procedure 12(b)(2). Specifically, Defendants claim they lack sufficient contacts with Idaho, and thus the Court cannot exercise specific personal jurisdiction over them consistent with the Due Process Clause of the Fourteenth Amendment. For the reasons explained below, the Court will deny Defendants' motion.

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND[1]

Plaintiffs Debby and Robert Haake are residents of Idaho, having moved to Idaho from Illinois in January of 2009. Defendant Barry Strudwick is President and general agent of Defendant Grupo Del Pacifico Development Venture S.A. Strudwick is a resident of Maryland; Grupo Del Pacifico is a company incorporated under the laws of and with its principle place of business in Costa Rica. For purposes of this motion only, the Court accepts the Haakes' allegation that Strudwick uses Grupo Del Pacifico as his alter ego notwithstanding Strudwick's claim to the contrary.

This action arises out of Defendants' alleged breach of their contractual obligation to complete construction of a residential condominium—known as Casa Palma—for the Haakes in Esterillos Este, Puntarenas, Costa Rica. On April 15, 2010, the parties executed the Purchase and Construction Agreement ("the Agreement") related to the condominium. (Agreement, Dkt. 1-1.) Under the Agreement, the Haakes promised to make an "initial cash payment" of $150,000 by wire transfer to a bank account held by Grupo Del Pacifico in Maryland. (*Id.* ¶ 6(A).) The Agreement also contemplates a series of periodic $150,000 construction payments culminating in a $250,000 payment at closing, as well as payments for costs and expenses incurred after construction is substantially complete. (*Id.* ¶¶ 6(B)–(C), (F).) The Agreement also includes a change

---

[1] For the purposes of Defendants' motion to dismiss only, this "Background" section accepts as true the allegations raised in the Haakes' Complaint and the uncontroverted allegations in the affidavits filed in connection with the instant motion. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). The Court considers any disputed material facts in the light most favorable to the Haakes. *Id.*

order procedure whereby the parties can make mutually agreeable modifications to the planned construction. (*Id.* ¶ 12.)

On or about April 15, 2010, the Haakes wired the $150,000 initial cash payment from their Idaho bank account to Grupo Del Pacifico's account in Maryland. Although Defendants received the payment, Casa Palma remains in virtually the same unfinished condition as it was before the parties executed the Agreement.

The Haakes filed suit on May 30, 2014, seeking to recover the initial cash payment, pre- and post-judgment interest, and attorney fees and costs. Premising subject matter jurisdiction on diversity of citizenship, the Haakes assert four state-law causes of action: (1) breach of the Agreement, (2) fraudulent misrepresentation of intent to perform under the Agreement, (3) conversion and civil theft, and (4) unjust enrichment.

On July 11, 2014, Defendants filed a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2). Defendants argue their contacts with Idaho are incidental to the parties' ongoing business relationship, which predates the Haakes' unilateral decision to move to Idaho from Illinois. This fortuitous connection to Idaho, Defendants argue, renders personal jurisdiction by an Idaho court incompatible with due process principles. The Haakes respond that Defendants have sufficient contacts with Idaho to establish personal jurisdiction. Specifically, the Haakes note that Strudwick repeatedly pitched Casa Palma in phone calls and emails to them while at their Boise, Idaho residence. The Haakes also emphasize that the Agreement for the purchase and construction of Casa Palma expressly recites their Boise, Idaho address. Moreover, the funds for the initial cash payment were drawn from the Haakes' Idaho bank account. This

**MEMORANDUM DECISION AND ORDER - 3**

combination of contacts, the Haakes argue, allows the Court to exercise personal jurisdiction consistent with due process.

It is undisputed that Defendants' only contacts with Idaho relate to negotiation and formation of the Agreement. Grupo Del Pacifico has no offices, has no employees, and does not pay income taxes in Idaho. Likewise, Strudwick has no agents, employees, or property in Idaho.

The parties have consented in writing to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. 11.) The Court heard the parties' oral arguments on Defendants' motion to dismiss on November 24, 2014, and now issues the following decision.

## LEGAL STANDARDS

Faced with Defendants' motion to dismiss under Rule 12(b)(2), the Haakes have the burden of proving personal jurisdiction is appropriate. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as here, Defendants' motion is based on written materials rather than an evidentiary hearing, the Haakes need establish only a prima facie showing of jurisdictional facts to avoid dismissal. *See Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

The Court must take the Haakes' uncontroverted allegations as true and resolve in their favor any conflicts between the parties over statements in the affidavits. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). However, where Defendants offer evidence in support of their motion, the Haakes may not simply rest on the bare allegations of their complaint. *See Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d

**MEMORANDUM DECISION AND ORDER - 4**

784, 787 (9th Cir. 1977). Instead, the Haakes must come forward with facts, by affidavit or otherwise, in response to Defendants' version of the facts. *See id.*

Because no federal statute governs personal jurisdiction in this case, the Court applies the law of the forum state, Idaho. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). This Court has previously observed that Idaho's long-arm statute, Idaho Code § 5-514, would permit broader jurisdiction than is allowed under the Due Process Clause of the Fourteenth Amendment. *Wells Cargo, Inc. v. Transport Ins. Co.*, 676 F.Supp.2d 1114, 1119 n.2 (D. Idaho 2009) (citing *Smalley v. Kaiser*, 950 P.2d 1248 (Idaho 1997); *Saint Alphonsus Reg'l Med. Ctr. v. Washington*, 852 P.2d 491 (Idaho 1993)). Thus, the inquiry under Idaho's long-arm statute collapses into the due process analysis, and the Court need only look to the Due Process Clause to determine personal jurisdiction.

The exercise of personal jurisdiction over a defendant comports with due process only if the defendant "has 'certain minimum contacts' with the relevant forum 'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Yahoo!, Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945)). "Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes, a forum may exercise only 'specific' jurisdiction—that is, jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claim." *Id.* Because the Haakes concede that Defendants' contacts with Idaho are too limited to

**MEMORANDUM DECISION AND ORDER - 5**

support general jurisdiction, the issue is whether Defendants are subject to specific jurisdiction in Idaho.

In the United States Ninth Circuit, a three-prong test governs the specific jurisdiction analysis:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id*. at 1205–06 (quoting *Schwarzenegger*, 374 F.3d at 802). The Haakes have the burden of satisfying the first two prongs. *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). If the Haakes do so, Defendants have the burden to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802). In other words, if the Haakes make a prima facie showing on the first two prongs, dismissal is appropriate only if Defendants carry their "heavy burden of rebutting the strong presumption in favor of jurisdiction." *Ballard*, 65 F.3d at 1500.

## DISCUSSION

### 1. Purposeful Availment or Direction

The first prong of the specific jurisdiction test focuses on "the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts." *Menken*, 503 F.3d at 1058. It "may be satisfied by purposeful

availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo!*, 433 F.3d at 1206. These requirements ensure a nonresident defendant will not be "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations and citations omitted). But, "[s]o long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Id*. at 475 n.18 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

In analyzing the first prong, the United States Court of Appeals for the Ninth Circuit distinguishes between cases sounding in contract and cases sounding in tort. In contract actions, the Court asks whether the "defendant purposefully avails itself of the privilege of conducting activities or consummates a transaction in the forum, focusing on activities such as delivering goods or executing a contract." *Yahoo!*, 433 F.3d at 1206 (internal quotations omitted). In tort actions, the inquiry focuses on whether the defendant purposefully directed tortious conduct at the forum. *Id*. Because the Haakes' causes of action sound in both contract (breach of contract and unjust enrichment) and tort (fraudulent misrepresentation and conversion), the Court will analyze both purposeful availment and direction.

### A. *Purposeful Availment*

The United States Supreme Court has emphasized the need for a "highly realistic"—as opposed to a rigid or formalistic—approach to personal jurisdiction in contract cases. *Burger King*, 471 U.S. at 479. This approach recognizes that a "contract is

**MEMORANDUM DECISION AND ORDER - 7**

ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Id*. (internal quotations omitted). For that reason, it is well-established that "an individual's contract with an out-of-state party *alone*" does not give rise to sufficient minimum contacts. *Id.*; *see also Boschetto*, 539 F.3d at 1017 (same). Rather, the defendant "must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state," *Boschetto*, 539 F.3d at 1017 (internal quotation marks and citation omitted), considering factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties actual course of dealing." *Burger King*, 471 U.S. at 479.

In a unanimous decision issued just last term—which neither party deemed worthy of citation—the Supreme Court reaffirmed two guiding principles. *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014). First, the Court underscored the "defendant-focused" nature of the minimum contacts inquiry. *Id*. Sufficient contacts cannot be established merely by showing the plaintiff's (or a third party's) contacts with the forum state. *Id.* Second, the analysis must look to "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. However, the Court went on to explain that, although the defendant's physical presence in the forum is not necessary, entry into the forum—"through an agent, goods, mail, or other some means—is certainly a relevant contact." *Id*. (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773–74 (1984)).

Defendants invoke both principles in support of their motion to dismiss. Specifically, Defendants contend their only contacts with Idaho grew out of the Haakes' unilateral decision to move to Idaho, not Defendants' contacts with Idaho itself. In support, Defendants note the Agreement not only pertains to real estate in Costa Rica, but also contains a Costa Rican choice-of-law provision. (Agreement, Dkt. 1-1.) Defendants also emphasize that the parties' business relationship began in November of 2005, when the Haakes resided in Illinois. Further, according to Strudwick's declaration, it was the Haakes, not Defendants, who initiated the relationship by contacting Grupo Del Pacifico in 2005. (Strudwick Dec. ¶ 13–15, Dkt. 5-2 at 2–3.)

Following this initial contact, the Haakes purchased a condominium in Costa Rica from Defendants in April of 2006. From 2006 through 2014, Grupo Del Pacifico provided the Haakes with property management services at this condominium, resulting in frequent communications between the Haakes and Defendants' staff in Costa Rica. (*See, e.g.*, Emails, Dkt. 5-4, 5-5.) On April 6, 2010, shortly before they executed the 2010 Agreement, the parties signed a Letter of Understanding that is expressly incorporated into the Agreement. (Agreement ¶ 6, Dkt. 1-1 at 2; Letter of Understanding, Dkt. 7-5 at 7–8.) The Letter of Understanding provides the Haakes three options for financing the construction of Casa Palma: (1) converting the initial cash payment to a construction loan, (2) trading the condominium the Haakes purchased in 2006 for a credit on the Casa Palma purchase price, and (3) entering into a "joint venture" with Grupo Del Pacifico to sell the completed Casa Palma. Thus, Defendants characterize the Casa Palma

transaction as a continuation of a business relationship that existed before the Haakes moved to Idaho.

On the other hand, the Haakes characterize their 2010 and 2006 condominium purchases as "separate" transactions. (Haake Dec. ¶ 3, Dkt. 7-1 at 2.) But whether the 2010 Agreement is separate from the 2006 condominium purchase is immaterial. Regardless of how the Court views the parties' business relationship, the record establishes that Defendants did more than simply contract with a couple who happened to reside in Idaho.

In fact, there are several relevant contacts between Defendants and Idaho. First, Strudwick began pitching the Casa Palma deal to the Haakes *after* they moved to Idaho.[2] Second, in April of 2010, Defendants mailed the Agreement regarding Casa Palma to the Haakes' residence in Idaho. Third, the Agreement specifically recites the Haakes' Idaho address. Fourth, Defendants accepted the $150,000 initial cash payment drawn from the Haakes' bank account in Idaho. Fifth, the Agreement specifically contemplated ongoing contacts between the parties—not only through phased payments during construction of Casa Palma, but also through the procedure for change orders. And sixth, the parties' Letter of Understanding likewise contemplated a continuing relationship in the form of a joint venture to sell Casa Palma.

---

[2] For example, on December 14, 2009, Strudwick emailed the Haakes an artist's renderings of the completed Casa Palma, stating "[t]he house can be completed by the end of March if we get started now." (Dkt. 7-2 at 2.) On December 24, 2009, Strudwick emailed the Haakes pictures of the unfinished Casa Palma and a letter touting its value as an investment property. (Dkt. 7-3.) The letter also proposed to "tweak" the proposed terms of the Casa Palma sale "to make it more favorable." (*Id*. at 7.)

**MEMORANDUM DECISION AND ORDER - 10**

Nevertheless, Defendants cite *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), for the proposition that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." And, to the extent the Casa Palma Agreement is considered a separate transaction, Defendants further argue the Ninth Circuit's 2008 decision in *Boschetto* requires the Court to find no jurisdiction. While these arguments have some appeal at first blush, they ignore the undisputed fact that Strudwick began pitching the Casa Palma transaction *after*[3] the Haakes moved to Idaho, directing solicitous communications into Idaho by phone, email, and regular mail.

Defendants' solicitations readily distinguish *Hanson*. That case involved a challenge to the validity of trust agreement executed under the laws of, and administered by a trustee in, Delaware. *Hanson*, 357 U.S. 238–41. Years after executing the trust agreement, the settlor moved to Florida, where she received trust income and executed powers of appointment. *Id*. at 252. In holding that the Florida courts lacked personal jurisdiction over the trustee, the Court found it decisive that the trustee did not perform any acts, solicit any business, nor attempt to enforce any obligation in Florida. *Id.* Here, by contrast, Defendants reached out to Idaho, soliciting Idaho residents to execute the Agreement and thereby imposing continuing obligations on the parties. *See Burger King*,

---

[3] While Strudwick's declaration indicates the parties had a business relationship dating back to 2005, it does not contradict Robert Haake's statement that, "[a]fter moving to Idaho, Defendant Strudwick contacted my wife and me, in Idaho, to purchase a partially constructed home in Costa Rica." (Haake Dec. ¶ 7, Dkt. 7-1 at 3.)

**MEMORANDUM DECISION AND ORDER - 11**

471 U.S. at 476. Indeed, under the Letter of Understanding, the parties' relationship could develop into a joint venture to sell Casa Palma.

*Boschetto* also is distinguishable. That case involved a "one-shot affair" in which a Wisconsin seller advertised a vintage automobile on the eBay Internet auction site. 539 F.3d at 1017. Upon delivery of the automobile, Boschetto—the winning bidder and a California resident—noticed the automobile was not in the "awesome" condition advertised and eventually sued the seller in the Northern District of California. *Id.* at 1014–15. The district court dismissed for lack of personal jurisdiction and the Ninth Circuit affirmed.

In deciding the Wisconsin seller had insufficient contacts with California, the Ninth Circuit focused on the one-time nature of the sale. *Id.* at 1019. The sale created no ongoing obligations for the seller in California—in fact, it was the buyer who arranged to have the vehicle transported from Wisconsin to California. Moreover, the eBay advertisement was no more aimed at California than it was the seller's home state of Wisconsin. It was the plaintiff buyer who unilaterally created the link to California by placing the winning bid, and the Ninth Circuit determined "the use of eBay as the conduit for that transaction did not have any dispositive effect" because there was no evidence the seller regularly used eBay to sell automobiles. *Id.*

This case, unlike *Boschetto*, involves a longer-term contractual relationship and business solicitations deliberately aimed at the forum. Again, the Agreement imposes ongoing payment and performance obligations and contemplates future contacts between the parties for change orders and possibly even the sale of the completed condominium—

**MEMORANDUM DECISION AND ORDER - 12**

it is not a one-shot contract for the sale of goods. In addition, Defendants were not generally advertising Casa Palma; rather, they specifically directed mail, email, and phone calls at Idaho in their effort to persuade the Haakes to purchase the property.[4]

Even if the Court considers these solicitations as outgrowths of the parties' existing business relationship, it is apparent that Defendants knew they were transacting business with Idaho residents by April 6, 2010. On that date, a Grupo Del Pacifico employee emailed the Haakes a draft Letter of Understanding and a draft of the Agreement—both of which recite the Haakes' Idaho address. (Dkt. 7-4 at 4, 6.) Moreover, Defendants reached out to Idaho with an alleged intent to defraud two of its residents. Consequently, Defendants' decisions to solicit business, contract, and thereby create ongoing contractual ties to Idaho are sufficient to establish that Defendants purposefully availed themselves of the privilege of conducting activities in Idaho.[5] *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986) ("[I]f

---

[4] Suggesting that Strudwick unknowingly reached out to Idaho, Defendants argue in their reply brief that the Haakes produced no evidence that they changed their email addresses or phone numbers upon moving to Idaho. (Dkt. 9 at 8.) However, Strudwick's declaration is devoid of any assertion that he did not know the Haakes moved to Idaho when he began pitching the Casa Palma sale in 2009. At any rate, Strudwick's knowledge at the outset is immaterial, because it is undisputed that Defendants executed the Agreement with knowledge that they were contracting with Idaho residents.

[5] Neither the subject matter of the Agreement—real property in Costa Rica—nor the Agreement's Costa Rican choice-of-law provision alter this conclusion. While the choice-of-law provision is a relevant jurisdictional factor, it does not conclusively establish that personal jurisdiction is lacking in Idaho. *Idaho Ry. Supply, Inc. v. Upadhya*, No. CV09-77-S-EJL, 2010 WL 996477 at *6 (D. Idaho Mar. 17, 2010). This is in part because "potentially conflicting 'fundamental social policies' can usually be accommodated through choice-of-law rules rather than outright preclusion of jurisdiction in the forum." *Burger King*, 471 U.S. at 483 n.26. And, because the Haakes allege Defendants committed intentional torts with effects in Idaho, the Court finds Defendants' solicitation of business in Idaho more jurisdictionally significant in this case than the Agreement's subject matter.

**MEMORANDUM DECISION AND ORDER - 13**

the defendant directly solicits business in the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws.").

   B.   *Purposeful Direction*

The Haakes also have made a prima facie showing that Defendants purposefully directed intentionally tortious conduct at Idaho. In analyzing specific jurisdiction in the context of intentional torts, courts in the Ninth Circuit apply the "effects" test set forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783, 789–90 (1984). *Yahoo!*, 433 F.3d at 1206. "The effects test is satisfied if (1) the defendant committed an intentional act; (2) the act was expressly aimed at the forum state; and (3) the act caused harm that the defendant knew was likely to be suffered in the forum state." *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 609 (9th Cir. 2010). As the Supreme Court recently reaffirmed, *Calder*'s "effects" test is satisfied when "intentional conduct by the defendant . . . creates the necessary contacts with the forum." *Walden*, 134 S. Ct. at 1123.

*Walden* is instructive. The case involved a suit under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), alleging that an Atlanta-based Drug Enforcement Administration agent violated the plaintiffs' Fourth Amendment rights by seizing almost $97,000 in cash from the plaintiffs while they waited in Atlanta for a connecting flight to Las Vegas. *Walden*, 134 S. Ct. at 1119–20. Plaintiffs filed suit in Nevada, but the Supreme Court found the agent had insufficient contacts with that forum to justify personal jurisdiction. The Court emphasized that all of the allegedly wrongful conduct occurred in Georgia; the agent "never traveled to, conducted activities within, contacted

**MEMORANDUM DECISION AND ORDER - 14**

anyone in, or sent anything or anyone to Nevada." *Id.* at 1124. Thus, "the mere fact that his conduct affected plaintiffs with connections to the forum State d[id] not suffice to authorize jurisdiction." *Id.* at 1126.

While it is undisputed that Defendants never met with the Haakes in person in Idaho, it is also undisputed that they contacted the Haakes in, and sent the Agreement to, Idaho. Indeed, the solicitations Defendants directed at Idaho form the basis for the Haakes' fraudulent misrepresentation claim. (Complaint ¶ 38, Dkt. 1 at 6 ("At the time of making their promise to perform under the contract, Defendants had no intention of completing the construction of Casa Palma.")); *see also Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (finding correspondence with known residents of the forum state established that tortious conduct was expressly aimed at the forum). Likewise, Defendants' alleged conversion of the Haakes' initial cash payment also targeted Idaho.

Unlike *Walden*, where the plaintiffs' lack of access to the seized cash could have occurred in any forum, the alleged conversion here involves funds drawn from an Idaho bank account. And, because Defendants knowingly contracted with Idaho residents and accepted funds from an Idaho bank account, Defendants knew their alleged tortious conduct would cause harm in Idaho. Thus, Defendants not only caused foreseeable harm in Idaho, they purposefully directed tortious acts at Idaho.

2.  **Relatedness**

The second prong of the personal jurisdiction analysis asks whether the plaintiff's claim arises out of or relates to the defendant's forum-related activities. *Yahoo!*, 433 F.3d

**MEMORANDUM DECISION AND ORDER - 15**

at 1206. A "single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state." *Id.* at 1210 (internal quotation marks and alterations omitted). Here, the Haakes contract and tort causes of action clearly arise from the Defendants' purposeful efforts to solicit business in, contract with residents of, and allegedly misappropriate funds drawn from Idaho. *See, e.g.*, *Hirsch v. Blue Cross, Blue Shield of Kan. City*, 800 F.2d 1474, 1480 (9th Cir. 1986) (finding contract at issue in breach of contract action constituted defendant's contact with forum and established relatedness). This is sufficient to satisfy the second prong of the specific jurisdiction test.

3. **Reasonableness**

Because the Haakes have satisfied the first two prongs, the Court presumes the exercise of specific jurisdiction is reasonable. *See Ballard*, 65 F.3d at 1500. It is Defendants' burden "to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Menken*, 503 F.3d at 1057 (quoting *Schwarzenegger*, 374 F.3d at 802). In assessing the reasonableness of exercising personal jurisdiction over Defendants, the Court balances the following factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.* (quoting *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir.2004)).

As to the first factor, "[e]ven if there is sufficient interjection into the forum to satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993) (internal quotation and alternations omitted). On this record, Defendants' contacts with Idaho appear to be limited to the transaction at issue in this lawsuit, but these contacts are sufficient to establish both purposeful availment and purposeful direction. Defendants knew the Haakes resided in Idaho and thus could have avoided the prospect of litigating in Idaho by not pursuing the transaction. Accordingly, Defendants' jurisdictionally sufficient, albeit limited, contacts with Idaho cannot, standing alone, rebut the presumption of reasonableness.

Defendants do not address the remaining factors. They do not argue that litigating in Idaho would be burdensome, let alone "so gravely difficult and inconvenient that [Defendants are] at a severe disadvantage in comparison to" the Haakes. *Burger King*, 471 U.S. at 478 (internal quotations omitted). They do not propose an alternative forum. Nor do Defendants suggest a conflict with the sovereignty of some other forum. These factors are at most neutral and more likely unfavorable to Defendants.

On balance, the Haakes choice of forum clearly indicates that it would be convenient and efficient for them to litigate in Idaho. And it would appear that Idaho has a strong interest in providing convenient and effective relief for residents who suffer economic harm due to out-of-state defendants' alleged fraudulent conduct. *See Blimka v. My Web Wholesaler,* LLC, 152 P.3d 594, 599 (Idaho 2007) (noting Idaho's "ever-

**MEMORANDUM DECISION AND ORDER - 17**

increasing interest in protecting its residents from fraud committed on them from afar"). In sum, Defendants have not made a compelling showing that the exercise of jurisdiction would be unreasonable.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Dkt. 5) is **DENIED**.

Dated: **December 01, 2014**

Honorable Candy W. Dale
United States Magistrate Judge